IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RANDALL S. WHITE, )
)
       Plaintiff, )
)
vs. ) Case No. 11–cv–230–MJR–SCW
)
WHITE COUNTY JAIL, RANDY COBB, )
TOM HEADLEY, and JOE WEISS, )
)
       Defendants.

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff has exhausted his administrative remedies as to the claims against Defendants. It is **RECOMMENDED** that the Court **FIND** that Plaintiff did not exhaust his administrative remedies as to his claim for deliberate indifference as to his chest pains but that no administrative remedies as to his claim of unsanitary cell conditions were in place for Plaintiff to exhaust. Therefore, it is further **RECOMMENDED** that the Court **GRANT IN PART AND DENY IN PART** Defendants' Motion Dismiss for Failure to Exhaust Administrative Remedies (Doc. 30), **DENY** Defendants' Rule 41(b) Motion for Involuntary Dismissal, and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Factual Findings

**A.    Factual Background**

Plaintiff's Amended Complaint (Doc. 9) alleges constitutional violations which allegedly

occurred while Plaintiff was a detainee at the White County Jail from January 4, 2010 to April 12, 2010. Plaintiff alleges that during his incarceration at White County Jail he was housed in a cell that had a backup of sewer water (Doc. 13). Plaintiff contends that he was exposed to sewer water and that when he asked for a mop from Defendants Cobb, Wise, and Hadley, he was refused (*Id.*). Not only does Plaintiff allege that Defendants subjected him to unsanitary conditions of his cell, but that they were also deliberately indifferent to his serious medical needs. Plaintiff alleges that at some unspecified time during his incarceration, he began having chest pains but he was never allowed to see medical staff, even though he informed correctional officers on duty (*Id.*). Plaintiff states that the officers informed Defendant Cobb of Plaintiff's condition, but Cobb refused Plaintiff's request for medical treatment and thus Plaintiff was never treated for his Amended Complaints (*Id.*).

Subsequent to Plaintiff's Amended Complaint surviving this Court's § 1915 review, Defendants filed a motion to dismiss for failure to exhaust administrative remedies, which this Court construes as a motion for summary judgment (Doc. 30). Specifically, Defendants argued that they were entitled to summary judgment because Plaintiff failed to file any grievances at the White County Jail regarding his cell condition or medical treatment. Defendants argued that, as to Plaintiff's medical treatment, he had been screened upon his entrance into the jail and that he was given a copy of the Inmate Handbook Rules and Regulations (hereinafter "Handbook") which informs inmates that they must complete a medical request form in order to obtain medical treatment. In support of their argument, Defendants offered the affidavit of Defendant Randy Cobb, the jail administrator of White County Jail at the time of Plaintiff's incarceration. Defendant Cobb testified that Plaintiff received a copy of the Handbook when he entered the Jail on January 4, 2010 and that a section of the Handbook, entitled Medical Treatment Request Procedure, informs inmates on how to properly request medical treatment by filing a medical request slip (Doc. 30-1 at ¶¶ 5-6; 30-3 at § XXI; Doc. 30-4). A review of

Plaintiff's file revealed that he did not complete a medical request form at any time during his incarceration (Doc. 30-1 at ¶ 10). Sabrina Stanley, a registered nurse at the White County Jail, also offered testimony in the form of an affidavit which indicated she had performed the medical screening of Plaintiff on January 8, 2010 and that he voiced no concerns or complaints at that time (Doc. 30-2 at ¶ 3-4). She also did not recall Plaintiff ever requesting medical treatment or submitting a medical form (*Id.* at ¶ 5).

As to Plaintiff's claims regarding his cell conditions, Defendants argue that Plaintiff was aware he could write down grievances regarding his conditions and that he was given blank pieces of paper once a week in order to, among other things, write down any grievances (Doc. 30-1 at ¶ 11-12). Plaintiff also did not have any grievances on file regarding his cell conditions (*Id.* at ¶ 14).

Approximately one month after filing their motion for summary judgment based on failure to exhaust, Defendants filed another Motion to Dismiss (Doc. 32), this one pursuant to Rule 41(b), requesting involuntarily dismissal for Plaintiff's failure to file a response to their summary judgment motion. Defendants also alleged that they had submitted Requests for Admissions to Plaintiff which he had failed to answer and that Plaintiff had subsequently been moved to a different correctional institution but had failed to inform the Court of his change of address. Defendants argued that, in light of Plaintiff's failure to answer their Requests for Admissions (Doc. 29), the Admissions should be deemed admitted and Plaintiff's Complaint dismissed.

In Response to the newly filed Motion to Dismiss, Plaintiff filed a Responsive pleading (Doc. 37), as well as Answers to Defendants' Requests for Admissions (Doc. 36), on December 6, 2012. Plaintiff informed the Court that while he had completed his Answers to the Requests for Admissions, he had been informed by his current institution, Pickneyville Correctional Center, that they would not e-file his responses (Doc. 37 at ¶ 2). He was then transferred to Big Muddy River Correctional Center

on November 16, 2011 which caused his mail to be backed up (*Id.*). He then tried to e-file his responses upon arriving at Big Muddy River, but the library could not file the responses until after the Thanksgiving holiday (*Id.* at ¶¶ 4 & 5). In addition to his Responsive pleading, Plaintiff also filed his Answers to Defendants' Request for Admissions (Doc. 36). Plaintiff denied ever receiving a copy of the jail's Handbook or blank paper to write grievances on (*Id.* at ¶¶ 4-6). He also denied ever being informed by the jail that he could file a medical grievance or a grievance on his cell conditions (*Id.* at ¶¶ 9 & 11). Plaintiff stated that the jail lacked a grievance procedure for him to complain about his issues while at the jail (*Id.* at ¶ 12).

Although Plaintiff did not file a formal response to Defendants' motion for summary judgment for failure to exhaust, he indicated in his response to Defendants' Rule 41(b) motion to dismiss that he did not realize that a response was necessary (Doc. 37 at ¶6). Further, his Answers to the Request to Admit created an issue of fact as to whether he had exhausted available administrative remedies. Specifically, Defendants argued that Plaintiff had received an inmate Handbook which outlined the procedures for seeking medical treatment and provided the Court with a medical request form which they allege were given to inmates. However, Plaintiff argued that he did not receive the Handbook and that he had made requests for medical treatment.

In light of Plaintiff's responsive pleading and his Answers to the Request to Admit, the undersigned deemed that a hearing was necessary based on the Seventh Circuit's opinion in *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008).** The undersigned held a hearing in this matter on February 8, 2012.[1] The following recommendations are based upon the evidence adduced at that hearing.

---

[1] This matter was originally scheduled for an evidentiary hearing on January 25, 2012. At that time Defendants stood by their position that Plaintiff's Complaint should be dismissed pursuant to Rule 41(b). At the hearing, however, the undersigned indicated that the Answers to the Requests for Admissions were deemed timely filed as Plaintiff had been in the process of being transferred and submitted them as soon as possible after his transfer. As Defendants were not anticipating

**B.**     *Pavey* **Hearing**

At the evidentiary hearing, Plaintiff testified that he had been housed at the White County Jail from January 4, 2010 until April 12, 2010. He had previously been jailed at the same facility sometime in 2008. Plaintiff admitted that upon going through the booking process, he was provided with a drinking cup, bar of soap, comb, toothbrush, toothpaste, wash cloth, and towel. He denied that either time he went through the booking office that a Handbook was in the cup as well. Defendants' attorney presented Plaintiff with an example cup of the ones given out at the facility and Plaintiff admitted that everything was the same in the cup except for the Handbook.

Plaintiff also acknowledged that he participated in a medical screening a few days after entering the jail. He admitted to voicing no concerns about his health at that time. He saw a nurse only twice while at the jail, for his initial screening and to check his TB test results. He did receive one piece of paper a week, but was never informed that he could write a grievance or medical request on it. He testified that one night he was suffering chest pains and wrote a "kite" to the CO but he never knew if the guards turned it in.

Randy Cobb, a jail administrator with the White County Jail, also testified as to the items issued to inmates at the Jail. Cobb testified that every time an individual enters the White County Jail facility, they receive a cup with toothbrush, toothpaste, bar of soap, and a comb, along with a copy of the Handbook. According to Cobb, this has been the facility's procedure for over ten years. As part of the Handbook, there is a section on medical treatment request procedure. According to the Handbook, each inmate is able to obtain a medical request form at least one time per day during cleanup, but Cobb also noted that inmates may request a form during any of the four times a day that medications are passed out. Inmates are also given at least two sheets of paper and envelopes so that

---

providing witness testimony, the Court reset the matter for February 8, 2012.

they may write letters, submit requests, or file complaints or grievances. Cobb testified that he had reviewed Plaintiff's booking file and he was unable to locate any medical request from Plaintiff.

Nurse Sabrina Stanley also testified to the medical procedures at White County Jail. She testified that she visited the jail one to two times a week in order to screen newly booked inmates. At the time of their screening, inmates can voice any complaints or medical issues that they are experiencing. She performed the medical screening of Plaintiff and her chart noted that every area of review was within the normal limits (Evidentiary Hearing Ex. D). While Plaintiff did inform Stanley that he had an issue with his right elbow in 2005, no current medical complaints or needs were noted (*Id.*). She also saw Plaintiff two days after his medical screening in order to check his TB test. Stanley was shown a copy of the medical request form which she identified and explained how she and the doctor review the medical request forms on Mondays (*See* Evidentiary Hearing Ex. C). She did not recall ever seeing a medical request form from Plaintiff nor were there any such forms in Plaintiff's chart.

### III. Conclusions of Law

**A.     Rule 41(b) Motion for Involuntary Dismissal**

Defendants first seek to dismiss Plaintiff's claims pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 41(b)** for Plaintiff's failure to respond to Defendants' Request for Admissions, failure to apprise the Court of his current address, and for his failure to exhaust his administrative remedies. Plaintiff responded to Defendants' motion informing the Court that he had indeed been transferred and that he was informed by Pickneyville Correctional Center that he could not e-file his requests to admit and that his mail was backed up upon him being transferred. Plaintiff also submitted that upon his transfer, he was informed by the prison library that he could not e-file anything, including his new address and Answers to Defendants' Request for Admissions until after Thanksgiving. Plaintiff's

Responses to both the Request for Admissions and Defendants' Rule 41(b) Motion for Dismissal were received on December 6, 2011 (Docs. 36 & 37).

Pursuant to **Rule 41(b)**, "[i[f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." **FED.R.CIV.P. 41(b).** The decision whether to dismiss a plaintiff's complaint for failure to comply with the rules or a court order are at the discretion of the Court. *Esposito v. Piatrowski*, **223 F.3d 497, 499 (7th Cir. 2000).** A dismissal for want of prosecution is appropriate only "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Maynard v. Nygren*, **332 F.3d 462, 467 (7th Cir. 2002).**

Here, the undersigned finds that dismissal is not proper in this case. While Plaintiff did delay in filing a Response to Defendants Request for Admissions and Motion for Summary Judgment based on exhaustion, Plaintiff ultimately did file responses to both documents.[2] He also offered an adequate explanation for the delay and for the delay in noting his change of address. While Plaintiff's responses were late, the undersigned deemed them timely. Thus, this situation does not appear to be the type of drastic conduct contemplated by the Seventh Circuit in determining whether to involuntarily dismiss a case, nor does it appear that Plaintiff has purposefully failed to prosecute his case. Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' motion to dismiss Plaintiff's Complaint under Rule 41(b).

---

[2] While Plaintiff did not technically file a responsive brief to the motion for summary judgment based on exhaustion, Plaintiff indicated in his response to the motion to involuntarily dismiss that he was unaware that a response on exhaustion had to be filed and the Court construed his Answer to the Request for Admissions as a Response to the motion for summary judgment.

**B. Motion to Dismiss for Failure to Exhaust Administrative Remedies**

*1. Summary Judgment Standard*

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted.*" *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are

to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." **Doss v. Gilkey, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

   2.   *Cell Conditions*

Plaintiff's Complaint alleges that Defendants were deliberately indifferent to Plaintiff's cell conditions. Defendants argue in their motion for summary judgment that Plaintiff has not exhausted his administrative remedies as to his cell conditions and that Plaintiff was aware he could write down any grievances with respect to prison conditions but failed to do so. Defendants point out that blank pieces of paper were provided to inmates, including Plaintiff, on a weekly basis in order to write down grievances (Doc. 30 Ex. 1 at ¶¶ 11 & 12). Plaintiff has stated that he was never given blank

paper in which to file grievances, nor did he know he could file grievances on his cell conditions as there were no grievance procedures at the White County Jail (Doc. 36 at ¶¶ 6, 11, & 12). Plaintiff, in essence, argues that he could not exhaust because Defendants did not have a grievance procedure that he was aware of and thus there were no administrative remedies available to him.

It is clear from the plain language of the PLRA that an inmate is only required to exhaust those administrative remedies which are available to him. **42 U.S.C. § 1997e(a)**. The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002).** The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, **310 F. Appx. 10, 13, 2009 WL 330531 (7th Cir. 2009) (citing** *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006)).**

Generally speaking, if an inmate follows the prescribed steps and can do nothing more, then available remedies were exhausted. *Wilder*, **310 F. Appx. at 13.** An inmate forfeits the grievance process when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, **458 F.3d at 684.** Nevertheless, an inmate "cannot be faulted for not knowing how best to respond to prison authorities' inaction." *Wilder*, **310 F. Appx. at 14 (citing** *Dole v. Chandler*, **438 F.3d 804, 811 (7th Cir. 2006)).** Further "when a grievance meets all of the Administrative Code's written requirements, it cannot be dismissed because of a requirement on which 'the administrative rulebook is silent.'" *Dole*, **438 F.3d at 810 (quoting** *Strong v. David*, **297 F.3d 646, 650 (7th Cir. 2002))**.

Here, the Court finds that, as a matter of law, White County Jail, at the time that Plaintiff was housed as a detainee, did not have a legitimate grievance procedure available to detainees like Plaintiff. Jail Administrator Randy Cobb testified that each detainee is provided with a copy of the jail's rules and regulations upon their entering White County Jail. However, a review of the White

County Sheriff's Office Jail Inmate Handbook Rules and Regulations reveals that there are no set rules for a detainee filing a grievance against the Jail (Doc. 30-3). The Handbook never provides a standard administrative grievance procedure; in fact, the Handbook never even mentions a grievance process within the jail.

Defendants also argue that Plaintiff was given blank pieces of paper for the purpose of filing grievances and that Plaintiff was aware that he could file a grievance by writing down his complaints, but there is no evidence that Plaintiff was informed that he could file grievances on the blank paper or that there was any type of standard grievance procedures for filing grievances. To the contrary, Cobb testified at the *Pavey* hearing and in his affidavit that, in addition to blank pages being provided for grievances, detainees are given blank paper for a variety of reasons including corresponding with family, request for extended visits, or other requests of jail staff (*See also* Doc. 30-1 at ¶ 12). Here, Defendants have failed to meet their burden of showing that White County Jail had a standard procedure for filing grievances. Thus, there were no remedies available to exhaust. **42 U.S.C. § 1997e(a)**. Therefore, the undersigned **RECOMMENDS** that the Court **FIND** that there were no administrative remedies available to Plaintiff regarding his cell conditions and, accordingly, the undersigned **RECOMMENDS** that the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's cell condition claim.

3. *Deliberate Indifference of Chest Pains*

Plaintiff's Amended Complaint also alleges that Defendants were deliberately indifferent to his serious medical needs. Specifically, Plaintiff alleges that during his stay at the White County Jail he suffered from chest pains and, although he would request to see medical staff, jail administrator Randy Cobb would not let him see medical staff. Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to his deliberate indifference claim because he failed to submit a medical

request form as dictated by the facility's Handbook. Plaintiff argues that he was never given the Handbook nor was he aware of the requirement to submit a medical request form.

Here, the undersigned recommends that the Court find that Plaintiff has failed to exhaust his administrative remedies as to his deliberate indifference claim. While Plaintiff testified that he did not receive a Handbook and was unaware of the medical request process at the jail, the undersigned does not find Plaintiff's testimony credible on this point. While Plaintiff testified that he was unaware of the medical procedures at White County Jail, this was not Plaintiff's first rodeo. Plaintiff had previously been an inmate at White County Jail in 2008. As Defendant Cobb testified, the Handbook and the medical procedures at White County had been in place for over ten years.

Further, the undersigned found both Defendant Cobb's and Sabrina Stanely's testimony to be credible. Cobb testified that every inmate, upon entering the facility, is given a copy of the jail's Handbook which includes procedures on medical requests. Specifically, the Handbook indicates that inmates seeking medical care may make requests on a daily basis and that they may obtain medical request forms one time per day, that must then be filled out and submitted (Doc. 30-3 § XXI). Inmates can also seek emergency medical attention (*Id.*). Cobb testified that while inmates are able to request the medical forms at least once a day, inmates are actually given approximately four opportunities to request the forms as medications are passed out four times a day. Stanley also testified as to the same procedure and indicated and she and the doctor would review the forms every week. Stanley also screened Plaintiff shortly after he was booked at the jail and then followed-up with him two days later. At no time did Plaintiff complain of chest pains or voice any medical concerns or complaints, nor did Stanley find any medical request forms in Plaintiff's file. Defendant Cobb also reviewed Plaintiff's file and could not locate any medical request forms. The Court finds the testimony of both of these witnesses to be credible.

The undersgiend notes that Plaintiff did testify that he wrote a "kite" on one occasion in late February regarding chest pains. However, this does not appear to be an isolated incident that would constitute a medical emergency for which a medical request form does not appear to be required under the Handbook. Instead, Plaintiff's Amended Complaint alleges that his chest pain was an ongoing situation that he experienced while housed at White County, yet he never filed a medical request form as required by the Handbook. Although Plaintiff claims ignorance of the medical procedure at White County, it is clear from the testimony of the witnesses that inmates are all given the Handbook as part of their booking process and inmates are given several opportunities throughout the day to request and fill out medical request forms. Further, given Plaintiff's prior stint at White County Jail, the Court does not find his testimony regarding his lack of knowledge of the medical processes credible. Thus, from the testimony and evidence presented at the evidentiary hearing, the undersigned finds that White County Jail had a clear procedure for requesting medical attention that was laid out in their Handbook; a procedure which Plaintiff was made aware of and failed to follow. Accordingly, the undersigned **FINDS** that Plaintiff has failed to exhaust his administrative remedies as to his deliberate indifference claim. As the failure to file the proper forms appears to be the sole fault of Plaintiff, the undersigned **RECOMMENDS** that Count 3 of Plaintiff's Amended Complaint be **DISMISSED with prejudice.**

## IV. <u>Conclusion</u>

Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Doc. 30), which the undersigned construed as a motion for summary judgment, and **DENY** Defendants' Rule 41(b) Motion for Involuntary Dismissal (Doc. 32). Specifically, as to the motion for summary judgment based on failure to exhaust, it is **RECOMMENDED** that the Court **DENY**

Defendants' motion as to the cell condition claims, but **GRANT** Defendants' motion as to the deliberate indifference medical claim as the undersigned **FINDS** that Plaintiff had not exhausted his administrative remedies as to that claim. Thus, the undersigned **RECOMMENDS** that the Court **DISMISS with prejudice** Plaintiff's claim of deliberate indifference (i.e. Count 3).

Should the Court adopt this Report and Recommendation in its entirety, the only claims that will remain are Plaintiff's Count 1 claim of unsanitary cell conditions against Defendants White County Jail, Randy Cobb, Tom Hadley, and Joe Wise.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

IT IS SO ORDERED.

DATED: February 17, 2012.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge