IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RANDALL S. WHITE,  )
 )
    Plaintiff,  )
 )
    v.  )    Case No. 11-cv-0230-MJR-SCW
 )
WHITE COUNTY JAIL, RANDY  )
COBB, TOM HEADLEY and  )
JOE WEISS,  )
 )
    Defendants.  )

MEMORANDUM AND ORDER

REAGAN, District Judge:

## I. Introduction and Factual/Procedural Background

Plaintiff Randall White, an inmate currently incarcerated in the Pinckneyville Correctional Center, was at all times relevant to this action housed in the White County Jail. White brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Liberally construed, White's complaint alleges three claims of Eighth Amendment violations: Defendants housed him in unsanitary and hazardous conditions (Count 1); Defendants subjected him to verbal harassment (Count 2); and Defendants were deliberately indifferent to his serious medical needs (Count 3).

On preliminary review, the Court dismissed Count 2, White's claim that Defendants had subjected him to verbal harassment, but found that he had stated a claim as to his allegations of being housed in unsanitary

1

conditions and deliberate indifference to serious medical needs (Doc. 13).

On October 28, 2011, Defendants filed a motion to dismiss (which Judge Williams construed as a motion for summary judgment), asserting that White failed to exhaust his administrative remedies prior to filing suit, in violation of 42 U.S.C. § 1997e(a) (Docs. 30, 42). Approximately one month later, Defendants filed a second motion to dismiss (Doc. 32). Pursuant to Rule 41(b), Defendants requested involuntary dismissal of this action because White failed to file a response to their summary judgment motion. Additionally, Defendants alleged that White failed to answer their Requests for Admissions and failed to keep the Court apprised of his address.

White responded to the second motion to dismiss as well as providing Answers to Defendants' Requests for Admissions on December 6, 2012 (Docs. 36, 37). He informed the Court that while he had completed his Answers to the Requests for Admissions, Pickneyville Correctional Center, where he was housed at the time, would not e-file his responses (Doc. 37 at ¶ 2). His subsequent transfer to Big Muddy River Correctional Center also delayed his mail. After his November 16, 2011, arrival at Big Muddy, White tried to e-file his responses but was told that the library could not file the responses until after the Thanksgiving holiday (*Id.* at ¶¶ 4 & 5).

In light of White's responsive pleading and his Answers to the Request to Admit, Judge Williams deemed it necessary to set this matter for

a hearing pursuant to *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008) (Doc. 31). On February 8, 2012, Judge Williams conducted a *Pavey* hearing and took the matter under advisement.

On February 17, 2012, Judge Williams submitted a Report and Recommendation ("the Report") pursuant to **28 U.S.C. § 636(b)(1)(B)**, recommending that the Court grant in part and deny in part Defendants' motion for summary judgment based on failure to exhaust administrative remedies (Doc. 30) and deny Defendants' Rule 41(b) motion for involuntary dismissal (Doc. 32). Specifically, Judge Williams recommended that the Court deny Defendants' motion as to the cell conditions claims but grant it as to the deliberate indifference medical claim and dismiss that claim with prejudice because White had not exhausted his remedies as to that claim.

The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" within 14 days of service of the Report. White filed a timely objection (Doc. 50).

Accordingly, the Court will undertake *de novo* review of the portions of the Report to which specific objection was made. **28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); Southern District of Illinois Local Rule 73.1(b);** *Govas v. Chalmers*, **965 F.2d 298, 301 (7th Cir. 1992)**. The Court may accept, reject or modify the recommended decision, or recommit the matter to the Magistrate Judge with instructions. **FED. R. CIV.**

P. 72(b); Local Rule 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999).

II. **Applicable Legal Standard**

Generally, when deciding a motion to dismiss or for summary judgment, the Court construes all facts in the light most favorable to and draws all legitimate inferences in favor of, the non-moving party. *Regent v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir.2010). However, when ruling on the exhaustion issue, the Court may make credibility determinations and findings of fact. *Pavey v. Conley*, 663 F.3d 899, 904–05 (7th Cir. 2011), *citing Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."); *United States v. Norris*, 640 F.3d 295, 297 n. 1 (7th Cir. 2011) (explaining that a credibility determination may be disturbed only if "completely without foundation").

As the Seventh Circuit Court of Appeals explained, where (as here) a magistrate judge conducts an evidentiary hearing, submits his findings of fact and recommendations for disposition, and objections are filed,

> The district court is required to conduct a *de novo* determination of those portions of the magistrate judge's report and recommendations to which objections have been filed. But this *de novo determination* is not the same as a *de novo hearing.* The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations. Rather, the district court has discretion to "accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." If the district court finds a problem, it may take additional evidence, call witnesses, or remand to the magistrate judge for further development. But if following a review of the record the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own.

***Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995).**

With these principles in mind, the Court undertakes *de novo* review.

### III. Analysis

With respect to the issue of exhaustion of remedies, the Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. **42 U.S.C. § 1997e(a)**.

In ***Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999)**, the Court of Appeals for the Seventh Circuit held that exhaustion of administrative remedies, while not jurisdictional *per se*, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy and regardless of notions of judicial economy. ***Perez*,**

**182 F.3d at 537**. Exhaustion means that the prisoner has "complete[d] the administrative process by following the rules the state has established for that process." **Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002).** "Any other approach … would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem - or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner." **Id. at 1023-24.** "Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." **Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000)**.

The grievance procedures applicable to the Illinois Department of Corrections are set forth in **20 Ill. Admin. Code §§ 504.800-504.850**. To be fully exhausted, a grievance must be pursued through the institutional system and ultimately be denied by the Administrative Review Board. **Id.** The grievance procedure requires an inmate to provide "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. **§ 504.810(b)**.

In White's objection to the Report, he acknowledges that he did not exhaust his remedies but contends that his failure is excusable because

filling out a medical request form could result in his having to pay $20.00, and he might have to choose between hygiene (buying a bar of soap) and healthcare.  Unfortunately for White, this objection effectively concedes that (1) he failed to exhaust his administrative remedies and (2) he did not fill out medical request forms because he did not want to be assessed a co-pay.  He attaches to his objection a copy of the Inmate Handbook Rules and Regulations, referring to the $20.00 co-pay requirement on page 8.  However, White fails to point out that the section he refers to contains the following sentence in bold:  "An inability to pay a co-payment will not prevent an inmate from receiving medical treatment" (Doc. 50, Exh. 1).

The affidavit of inmate Seyon Heywood, #R58464, is also unhelpful to White (Doc. 50, Exh. 2).  According to Heywood, inmates were denied law library access from approximately February 3 through February 23, 2012.  Defendants' motion to dismiss was filed in October 2011.  Consequently, there was ample time for White to access the law library so he could respond to the motion.

White does not challenge Judge Williams' credibility determinations as to the conflicting testimony at the *Pavey* hearing.  Upon review, the undersigned Judge finds that those determinations are well-founded.  Judge Williams found both Defendant Cobb's and nurse Sabrina Stanley's testimony to be credible. Cobb testified that every inmate, upon entering the facility, is given a copy of the jail's Handbook which includes

7

procedures on medical requests. Cobb testified that inmates may seek emergency care and have approximately four opportunities a day to obtain medical request forms, as medications are passed out four times a day. Stanley also testified to this procedure and indicated that she and the doctor would review the request forms every week. Additionally, Stanley screened White shortly after he was booked at the jail and then followed-up with him two days later. Stanley testified that at no time did White complain of chest pains or voice any medical concerns. Both Stanley and Cobb testified that they reviewed White's file and found no medical request forms.

Judge Williams found White's testimony that he had not been given the Inmate Handbook and did not know he had to fill out medical request forms to be not credible. Among other things, Judge Williams noted that White had previously been an inmate at White County Jail and this was not his "first rodeo." Judge Williams noted that White testified that he wrote a "kite" on one occasion regarding chest pains. However, Judge Williams concluded that this was not an isolated incident that would require emergency care for which no medical request form was required. Rather than alleging an emergency, the Amended Complaint claims ongoing chest pain that would require a medical request form under the provisions of the Handbook.

In sum, Judge Williams concluded that White's claim of ignorance of the medical procedure at White County was not credible since it

was clear from witnesses' testimony that all inmates are given copies of the Handbook as part of their booking process and that inmates are given several opportunities throughout the day to request and fill out medical request forms. Judge Williams found that White had failed to exhaust his administrative remedies as to his deliberate indifference claim and that this failure was solely White's fault. As a result, Judge Williams recommended that dismissal be with prejudice. *Pavey*, **544 F.3d at 742 (If the judge determines that the failure to exhaust was the prisoner's fault, the case is over.)**.

Given the conflicting testimony, whether to believe White's testimony or that of Cobb and Stanley is purely a credibility determination. Judge Williams had the benefit of having the witnesses before him and made explicit credibility determinations. Those determinations are supported by the record, and the undersigned Judge is satisfied with Judge Williams' findings and recommendations.

### IV. Conclusion

Having conducted *de novo* review, the Court **ADOPTS in its entirety** Judge Williams' February 17, 2012, Report and Recommendation (Doc. 47). The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Doc. 30), which the Court construes as a motion for summary judgment. Specifically, the Court **DENIES** Defendants' motion as to the cell

9

condition claims and **GRANTS** Defendants' motion as to the deliberate indifference medical claim, finding that White failed to exhaust his administrative remedies as to that claim. For the reasons set forth above, dismissal of the deliberate indifference medical claim (Count 3) is **with prejudice.** The Court **DENIES** Defendants' Rule 41(b) Motion for Involuntary Dismissal (Doc. 32).

White's sole remaining claim is Count 1, being housed in unsanitary cell conditions, against Defendants White County Jail, Randy Cobb, Tom Headley and Joe Wise.

IT IS SO ORDERED.

DATED this 11th day of April, 2012

<u>s/Michael J. Reagan</u>
MICHAEL J. REAGAN
United States District Judge